685 A.2d 880

**John C. WIEGAND**

v.

**STATE of Maryland.**

**Nos. 327, 328, 329 and 347, Sept. Term, 1996.**

Court of Special Appeals of Maryland.

Dec. 4, 1996.

Robert A. Diem, Bel Air, for Appellant.

Evelyn O. Cannon, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, and Regina Hollins Lewis, Assistant Attorney General, on the brief), Baltimore, for Appellee.

Argued before MOYLAN and CATHELL, JJ., and ALAN M. WILNER, Judge (retired), Specially Assigned.

ALAN M. WILNER, Judge, Specially Assigned.

Appellant is a bail bondsman who posted bonds in four separate cases pending in the Circuit Court for Cecil County. After the respective defendants failed to appear for trial, the

bonds were forfeited, and, eventually, judgments were entered against appellant. Appellant paid the principal amounts of the bonds but has refused to pay the court costs included in the judgments. The only issue in this appeal is whether he is liable for those costs.

This case is before us because of a regrettable series of lapses and errors on the part of both the court and the clerk. The question is the effect of those lapses and errors. To introduce the issue, we need to consider Md. Rule 4–217(i), which sets forth the procedure to be followed in forfeiting bail bonds, and Md.Code art. 27, § 616 1/2, which mandates certain of the procedures set forth in the Rule.

Rule 4–217(i)(1) provides that, if a defendant under bond fails to appear as required, the court "shall order forfeiture of the bond and issuance of a warrant for the defendant's arrest." The clerk is then required to "promptly notify" any surety on the bond "of the forfeiture of the bond" and the issuance of the warrant. Section (i)(2) of the Rule requires the court to "strike out the forfeiture" in whole or in part and set aside any judgment entered on the forfeiture if the defendant or the surety shows reasonable grounds for the non-appearance.

Section (i)(3) states, in relevant part, that, within 90 days from the date the defendant fails to appear, a surety shall satisfy the order of forfeiture, either by producing the defendant in court or paying "the penalty sum of the bond." Section (i)(4) provides that, if an order of forfeiture has not been stricken or satisfied within 90 days after the defendant's failure to appear, "the clerk shall forthwith" enter the order of forfeiture as a judgment in favor of the [county or State] "for the amount of the penalty sum of the bail bond, with interest from the date of forfeiture and costs . . . ."

These provisions necessarily hinge on the court and the clerk performing their respective duties in a proper and timely fashion. Their duties are ministerial ones, easy to satisfy. If either fails in its duty, however, as they did in this case, a problem arises.

Appellant posted bonds in varying amounts for Bruce Frieze, Cynthia Hamilton, Joseph Owens, and James Duff, Jr. When those defendants failed to appear for their respective court hearings, the court instructed the clerk to issue a bench warrant for the defendant's arrest and to forfeit the bond. The record does not contain any separate written order of the court. The only evidence of an order is the clerk's docket entry stating, in each case: "Issue bench warrant, forfeit bond w/ninety day stay."[1] Frieze, Owens, and Duff were never served with the warrant. In the Frieze, Owens, and Duff cases, the clerk purported to comply with the balance of section (i)(1) by sending a letter to appellant, informing him that the defendant had failed to appear and that, if appellant did not produce the defendant within the 90-day period, the bond "will be forfeited." Unfortunately, the clerk omitted to send such a letter, or any other notice, in the Hamilton case.

Appellant neither produced the defendants nor paid the penalty sum due on any of the bonds at that time. Nonetheless, however, (1) the court omitted to enter any further order of forfeiture, and (2) the clerk failed to enter judgment against appellant on any of the bonds. Sometime in 1995, it came to light that the defendants had not been produced and that no money had been paid on the bonds. On September 5, 1995, in an effort to correct the problem, the court issued new forfeiture orders in the four cases. Unlike the earlier procedure, the court actually issued a written order in each case "that the bond in the above named matter be forfeited"; the docket entry reflects that disposition through the notation: "Order to forfeit bond." The clerk then mailed a copy of each of the

---

**1.** Frieze was due to appear on November 18, 1993. With the 90-day stay, his $1,000 bond was presumably subject to forfeiture or was to be forfeited on February 16, 1994. Owens was to appear on December 15, 1993. With the 90-day stay, his bond was subject to forfeiture or to be effectively forfeited on March 7, 1994. Hamilton failed to appear on January 20, 1994. With the 90-day stay, her bond was subject to forfeiture or to be effectively forfeited on April 20, 1994. Duff failed to appear on July 21, 1994. With the 90-day stay, his bond was subject to forfeiture and to be effectively forfeited on October 19, 1994.

four orders to appellant on September 11, 1995.[2] On November 29, 1995—86 days after the new orders were issued—the clerk entered a judgment against appellant on each of the bonds for the respective principal amounts plus interest from September 5, court costs in the amount of $125, and recording costs of $15.

Appellant made no motion to strike or to alter or amend those judgments; instead, on December 4, 1995, he paid the penalty sums due on each of the bonds. The next day, however, he filed a petition in each of the four cases, requesting that he "be relieved of the Court Costs...."[3] The court denied those petitions on December 8, 1995 and appellant filed this appeal.

### DISCUSSION

■ Appellant hinges his argument on the proposition that effective orders of forfeiture were not entered on the docket until September 5, 1995. He avers that the initial orders to forfeit, coupled with a 90–day stay, did not constitute orders of forfeiture for purposes of the Rule. In the Hamilton case, he notes as well, he never received the required notice in any event. Upon the entry of effective orders of forfeiture on September 5, he urges that, under Rule 4–217(i)(3), he then had 90 days *from that date* to satisfy the order by paying the bond, and that he complied with his obligation by paying the principal amounts of the bonds before the expiration of the 90–day period. The clerk was in error, he argues, in entering the judgments (with the court costs included) during, rather than after, the 90–day period.

---

2. Why it took the clerk six days to mail the notice is unexplained. As appellant has not complained about that delay, however, we shall disregard it.

3. We note that, while appellant's brief refers to "court costs," the State claims that appellant did not pay the recording costs as well. We assume that "court costs" includes recording costs and that, therefore, appellant is challenging the imposition of the recording cost as well. The court costs were $125 for each case and the recording costs were $15 for each.

The State acknowledges that the effective orders of forfeiture were entered on September 5. It responds, however, that costs are not waived merely because a surety discharges an order of forfeiture within 90 days after its entry. According to the State, a surety can avoid costs only by producing the defendant or paying the bond within 90 days after the defendant's failure to appear. The order of forfeiture, it contends, can be issued at any time.

We reject the argument of the State and conclude that the court erred in denying appellant's petitions for recovery of the court costs.

The obligations and time sequences set forth in Rule 4–217(i) are obviously interrelated. Each succeeding one assumes that the court and the clerk have complied with their respective predicate obligations. The Maryland Rules, including Rule 4–217(i), are to be construed to secure simplicity in procedure, fairness in administration, and elimination of unjustifiable expense and delay. Md. Rule 1–201(a). When a rule, by using the word "shall," mandates conduct and no sanction or remedy for noncompliance is stated, "the court may determine the consequences of the noncompliance in light of the totality of the circumstances and the purpose of the rule." *Id.*

As noted, Rule 4–217(i) commences with the requirement that, if a defendant fails to appear, the court shall order forfeiture of the bond. Although, as the State argues, the rule does not set a specific time for the court to enter such an order, common sense would dictate that the order be entered very promptly. The entry of that order is a prerequisite to the notice required to be sent to the surety and marks the commencement of the 90–day period, under Rule 4–217(i)(3), for the surety to satisfy the forfeiture by producing the defendant or paying the bond. If the court delays in entering the order of forfeiture, the surety is deprived of an equivalent part of his 90–day grace period. We therefore reject the State's argument that the court has discretion to enter the order of forfeiture at any time. The court must enter that

order and the clerk must give the requisite notice promptly—certainly within one or two business days after the nonappearance becomes evident.

The first lapse in this case was on the part of the court. The rule is quite clear: upon a failure to appear, the court shall order forfeiture of the bond. The rule says nothing about a 90–day, or any other, stay. The mandated procedure is for the bond to be immediately forfeited, subject to the forfeiture being stricken if the defendant or the surety, *at any time,* shows reasonable grounds for the defendant's nonappearance. This implements the statutory direction, contained in Md.Code art. 27, § 616 1/2 (e), that the court "strike out a forfeiture of bail or collateral and discharge the underlying bond, where the defendant can show reasonable grounds for his nonappearance . . ." and that it "[a]llow a surety 90 days, or for good cause shown, 180 days from the date of failure to appear to produce the defendant *before requiring the payment of any forfeiture of bail or collateral . . . .*" (Emphasis added.) One cannot "strike out" a forfeiture unless a forfeiture has been entered.

■ The initial orders of the court, as reflected on the dockets, are, at best, ambiguous. The statement "forfeit bond w/ninety day stay" suggests that the actual order of forfeiture was stayed for 90 days. Indeed, that is precisely how the clerk interpreted the order for, as noted, he informed appellant in the three cases in which he decided to send notice that the bond "will be forfeited" if the defendant was not produced. That is not what the statute contemplates or the rule requires. The forfeiture may be stricken if the defendant can show reasonable grounds for his nonappearance and it may be satisfied if the defendant is actually produced, either of which will serve to absolve the surety from having to pay on the bond, but the actual forfeiture of the bond is to occur immediately, without any stay.

The State rightly concedes that these initial orders did not constitute effective orders of forfeiture. Especially when coupled with the clerk's notice, they reasonably could have led

appellant to believe that his 90–day grace period to produce the defendant or have the defendant explain his or her nonappearance would commence from some later order actually forfeiting the bond. Although one can speculate that an experienced bondsman should have known that the required procedure was otherwise, nonetheless appellant was entitled to rely on the notice he received from the clerk which, as we have observed, was not inconsistent with the court's direction as docketed.

We do not know, from the record in this case, what the practice is throughout the rest of the State, or even what it may routinely be in Cecil County, but we strongly admonish circuit court judges to follow Rule 4–217(i) as it is written. The rule is simple to follow. Promptly upon a nonappearance, the court must issue an order forfeiting the bond and directing the issuance of a warrant. The docket entry should accurately record that order, and the clerk should send a copy of it to the surety. The order can perhaps be stayed if there is some good reason particular to that case to stay it, but the forfeiture order should not be stayed, and no language regarding a stay should be included, simply in order to reflect the surety's ability to avoid ultimate liability by producing the defendant or presenting reasonable grounds for the defendant's nonappearance.

The fact that the court did not enter an effective order of forfeiture promptly should not, and, in our view, does not, of itself, preclude further proceedings to forfeit and collect on the bonds. The requirement of bail bonds, secured by collateral or the undertaking of a surety, is a vital part of our core commitment to avoid, whenever possible, the pre-trial detention of accused persons. Whether the accused himself, his family or friends, or a paid surety secures a bail bond, it is the credible threat of a real pecuniary loss that tends to assure the defendant's appearance in court; at least that is the assumption that necessarily underlies the use of secured bonds as an alternative to detention. To adopt an approach that would require the automatic release of collateral or a

surety's obligation simply because the court or a clerk does not enter a proper forfeiture order precisely as the rule requires would not only severely undercut that premise but could, in addition, prove fertile ground for the worst kinds of collusion and improprieties between obligors and court personnel. Such an approach would not be consistent with the principles of construction set forth in Rule 1–201.

The failure to enter a proper and timely order of forfeiture is not without consequence, however. On the one hand, disregarding the initial orders as effective orders of forfeiture makes moot the clerk's further failures (1) to notify appellant in the Hamilton case, and (2) to enter judgments "forthwith" on those orders. More significantly, it requires that the provisions of § (i)(3) of the rule be read in a more flexible way in order to carry out the intent of the Court of Appeals and the General Assembly and to promote fairness and justice.

Assuming as we must, and as the State concedes, that the effective orders of forfeiture were those entered on September 5, 1995, notice of which was sent to appellant six days later, we need to consider whether we can apply Rule 4–217(i)(3) literally as written. That section allows a surety to satisfy an order of forfeiture, by producing the defendant in court or paying "the penalty sum of the bond" within 90 days "from the date the defendant fails to appear." In the ordinary case, of course, that time requirement works quite well. It assumes that the court and the clerk have complied with their duties under the rule by promptly entering an order of forfeiture and notifying the surety of that order. Where the effective order of forfeiture is *not* entered promptly, however, that provision cannot operate as intended. It would be utterly absurd to conclude, as the State earnestly asks us to do, that a surety has 90 days from the defendant's failure to appear to satisfy an order of forfeiture that is not even entered until after the lapse of that 90–day period.

While we fully understand that the Maryland Rules of Procedure are not merely helpful hints to practice and procedure in the courts but are instead "precise rubrics" intended

to be followed, we surely do not believe that they should be interpreted to reach absurd and wholly unintended results. As with statutes, we are obliged to construe the rules to carry out the real intent of their promulgator—the Court of Appeals. The only sensible way to do that in this case is to construe the time period specified in Rule 4–217(i)(3) as commencing on the date the late-filed orders of forfeiture were actually entered. We can think of no other approach— and none has been suggested to us—that would better effectuate what we believe was the Court's intent.

When the rule is interpreted in that manner, it is evident that appellant had 90 days from September 5, 1995 to satisfy the orders of forfeiture by producing the defendants or paying "the penalty sum of the bond." He did that, in all four cases; within 90 days, he paid the penalty sums of the bonds. Had the clerk not made the last of his several mistakes by entering judgments prior to the expiration of the 90 days, no claim for court costs would even have arisen. Appellant cannot lawfully be penalized because of yet another mistake by the clerk. Entry of the judgments was itself an error, but, as appellant has voluntarily paid the penalty sums of the bonds and does not contest his liability for those amounts, his only viable complaint is with respect to the costs. His petitions should have been granted.

ORDER DENYING PETITIONS FOR RELIEF FROM COURT COSTS REVERSED; CASES REMANDED FOR ORDERS AMENDING JUDGMENTS AND DECLARING THEM SATISFIED; APPELLEE TO PAY THE COSTS.